UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE CRAIG S. ROMANZI,
Debtor.

FIEGER & FIEGER P.C., et al.,
Appellants,

v.

KENNETH A. NATHAN,
Appellee.
______________________________/

Case No. 16-cv-13986

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

UNITED STATES MAGISTRATE JUDGE
R. STEVEN WHALEN

**OPINION AND ORDER DENYING MOTION TO WITHDRAW THE REFERENCE [1] WITHOUT PREJUDICE**

## I. INTRODUCTION

This case stems from an involuntary bankruptcy proceeding filed against Craig S. Romanzi ("Debtor") on March 16, 2016. The bankruptcy trustee of Romanzi, Kenneth A. Nathan ("Appellee" or "Trustee") seeks recovery of an attorney fee that he alleges Fieger & Fieger, P.C. and Geoffrey N. Fieger ("Appellants" or "Defendants") wrongfully retained. Appellee claims the attorney fee is an asset of the bankruptcy estate.

This matter is presently before the Court on Appellants' Motion to Withdraw the Reference. Dkt. No. 1. Upon review of the pleadings, the Court finds that oral argument will not aid in the disposition of this matter. Accordingly, the Court will

decide the matter on the pleadings. *See* E.D. Mich. LR 7.1(f)(2). For the reasons explained fully below, Court **DENIES** Appellants' motion without prejudice.

## II. Factual And Procedural Background

Facts related to these proceedings were recited in a parallel appeal of a Bankruptcy Court order. *See In re Romanzi*, No. 16-CV-13986, 2017 WL 395289, at *1–2 (E.D. Mich. Jan. 30, 2017). For the sake of uniformity, the Court will repeat those facts again here:

> Debtor, Craig Romanzi, previously worked as a partner in the law firm of Romanzi & Nardicchio, PLLC. On February 12, 2014, Debtor joined the law firm of Fieger & Fieger, PC. On March 10, 2014, Debtor filed a wrongful death action in Wayne County Circuit Court (hereinafter, the "Thomas Litigation"). Debtor left the Fieger firm on February 9, 2015.
>
> The Fieger firm retained the Thomas Litigation on behalf of the plaintiffs. In August 2015, the Fieger firm filed a motion for approval of settlements and for an order authorizing the payment of attorney fees and costs. On August 16, 2015, Debtor filed a notice of claim of lien in the Thomas Litigation. In that notice, Debtor alleged that he brought the case to the Fieger firm and that he was entitled to a lien in the amount of one-third of the net recovery obtained in the case. On August 19, 2015, the Fieger firm filed a "Notice of Fraudulent Pleading," alleging that Debtor's claim of lien was fraudulent and that he had no interest in any of the attorney fees owed as a result of the settlement in the Thomas Litigation.
>
> On September 3, 2015, the state court in the Thomas Litigation entered an order approving wrongful death settlements and approving fees and costs in the case. In total, the Fieger firm was awarded $74,862.54 in costs and $3,547,541.10 in fees for the estates of Tracey Thomas, William Thomas, and Dorothy Thomas. The state court also entered an order absolving the state court defendants and their insurance carriers from any responsibility or liability relating to

> attorney liens. That order directed that the settlement checks shall be issued to the estates and the Fieger firm, "except for payments to fund any structures which are to be issued to or at the direction of the structure provider." Debtor did not seek reconsideration or appeal the orders entered regarding fees in the Thomas Litigation.
>
> On September 29, 2016, Debtor filed a complaint in Oakland County Circuit Court against the Fieger firm, Case Number 2016-151745-CB, alleging breach of contract, misrepresentation, fraud, conversion, and negligence. The complaint sought compensation for attorney fees Debtor believed the Fieger firm owed to him as a result of his involvement in the Thomas Litigation.
>
> An involuntary Chapter 7 bankruptcy case was filed against Debtor Craig S. Romanzi on March 16, 2016 in Case Number 16-43857-mbm (the "Bankruptcy Case"). Kenneth A. Nathan was appointed trustee over the bankruptcy estate. Among the assets allegedly owed to the estate is an amount equal to one-third (1/3) of the attorney fee of $3,547,541.242 from the Thomas Litigation.
>
> On July 6, 2016, Debtor's lawsuit in Oakland County Circuit Court was voluntarily dismissed without prejudice. On July 12, 2016, Trustee filed a five-count adversary complaint against the Fieger firm and Geoffrey Fieger (hereinafter referred to as the "Adversary Proceeding"). The Adversary Proceeding, No. 16-04672-mbm, includes claims for breach of contract, quantum meruit, misrepresentation, fraud, conversion, negligence, and a lien.

*Id*. at *1–2 (internal citations omitted).

## III. LEGAL STANDARD

A federal district court has original, but not exclusive, jurisdiction over bankruptcy cases and "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). However, "[e]ach district court may provide that any or all cases under title 11 and any or all proceedings

arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." 28 U.S.C. § 157(a). All such cases in the Eastern District of Michigan are referred automatically to the bankruptcy court pursuant to Local Rule 83.50(a)(1). E.D. Mich. LR 83.50(a) ("The court intends to give bankruptcy judges the broadest possible authority to administer cases and proceedings properly within their jurisdiction.").

Once a case is referred, 28 U.S.C. § 157(b)(1) "vests full judicial power in bankruptcy courts over 'core proceedings arising under title 11, or arising in a case under title 11.' " *Mich. Emp't Sec. Comm'n v. Wolverine Radio Co., Inc.* (*In re Wolverine Radio Co.*), 930 F.2d 1132, 1144 (6th Cir. 1991) (quoting *Wood v. Wood* (*In re Wood*), 825 F.2d 90, 96 (5th Cir. 1987)). The district court "may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." 28 U.S.C. § 157(d). The district court must "withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce," upon a timely motion of a party. *Id.*

Appellants in the present case do not clearly state whether they seek mandatory or permissive withdrawal, and did not respond to Appellee's argument that "the motion appears to seek permissive withdrawal." Dkt. No. 1, pp. 5, 11 (Pg.

ID 5, 11) (vacillating between arguing that withdrawal is "required" and that the court has "broad discretion in deciding whether to grant a permissive withdrawal"); Dkt. No. 3-1, p. 2 (Pg. ID 87). Based on the facts alleged, which do not involve consideration of federal laws or activities affecting interstate commerce, this Court interprets their motion to seek permissive withdrawal.

District Courts have "broad discretion" in deciding whether reference should be withdrawn for cause shown. *In re Millennium Studios, Inc.*, 286 B.R. 300, 303 (D. Md. 2002) (citing *In re C–TC 9th Avenue Partnership*, 177 B.R. 760, 765 (N.D.N.Y. 1995)). "Section 157(d) does not define 'for cause shown' for the purpose of withdrawing a reference to a bankruptcy court." *In re Cmty. Mem'l Hosp.*, 532 B.R. 898, 902 (E.D. Mich. 2015) (citing *Mathson Indus., Inc. v. Negri Bossi USA, Inc.* (*In re Mathson Indus., Inc.*), 408 B.R. 888, 891 (E.D. Mich. 2009)). Instead, district courts have considered the following factors when determining whether there is sufficient "cause" to withdraw a reference: (1) whether the claim is core or non-core; (2) what is the most efficient use of judicial resources; (3) what is the delay and what are the costs to the parties; (4) what will promote uniformity of bankruptcy administration; (5) what will prevent forum shopping; and (6) other related factors. *Id.* (citing *In re Mathson Indus., Inc.*, 408 B.R. at 891).

## IV. DISCUSSION

The Court will now proceed to analyze the motion for withdrawal of reference, in light of the factors recently enumerated in *In re Cmty. Mem'l Hosp.*, 532 B.R. 898 (E.D. Mich. 2015).

### A. Core Or Non-Core Determination

"The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11." 28 U.S.C. § 157(b)(3). "A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law." *Id*.

Here, the Bankruptcy Court did not fully engage in an analysis of whether the Adversary Proceeding was core or related to the Bankruptcy Case because Appellants did not satisfy two of the prongs required for mandatory abstention. Case No. 16-cv-13986, Dkt. No. 10, p. 34 (Pg. ID 244).

The parties dispute whether the Adversary Proceeding is a core or non-core proceeding. Appellants[1] argue that all of the claims in this adversary proceeding

[1] The Court reminds Appellants of their duty to comply with the Eastern District Local Rules, including requirements on type size. *See* Dkt. No. 4, pp. 2–5 n.1–4 (Pg. ID 122–25) (utilizing 10 point type size for all footnotes); E.D. Mich. LR 5.1(a)(3) ("type size of *all text and footnotes must be no smaller than* 10-1/2

involve rights created by state law and are thus non-core. Dkt. No. 1, p. 18 (Pg. ID 18). In so arguing, Appellants emphasize that the claims in the Adversary Proceeding were originally filed in state court prior to Debtor's involuntary bankruptcy proceeding. *Id*. at 19. Conversely, Appellee contends that this is a core proceeding. Dkt. No. 3-1, p. 5 (Pg. ID 90). More specifically, Appellee argues that the claims in the Adversary Proceeding are core because they "fall directly under federal bankruptcy law," 28 U.S.C. § 157(b)(2). *Id*.

After reviewing the claims in the Adversary Proceeding, it appears that they do not qualify as core. In the Sixth Circuit, "[i]f the proceeding does not invoke a substantive right created by federal bankruptcy law and is one that could exist outside of the bankruptcy, then it is not a core proceeding." *Michigan Employment Sec. Comm'n v. Wolverine Radio Co., Inc.* (*In re Wolverine Radio Co.*), 930 F.2d 1132, 1144 (6th Cir. 1991). In this case, although the claims asserted in the Adversary Proceeding may be *related to* the Bankruptcy Case, they could also exist outside of the bankruptcy proceeding. Indeed, claims identical to those in this adversary proceeding were pending in state court prior to the commencement of Debtor's involuntary bankruptcy proceeding. Therefore, the Court concludes that the claims involved in the Adversary Proceeding appear to be non-core and related to the Bankruptcy Case.

---

characters per inch (non-proportional) or *14 point* (proportional)." (emphasis added)). Future non-compliance may result in filings being stricken.

However, the Court's inquiry on this issue does not end at the determination that the claims are non-core. The Eastern District of Michigan Local Rules give "bankruptcy judges the broadest possible authority to administer cases and proceedings properly within their jurisdiction." E.D. Mich. LR 83.50(a)(1). Bankruptcy judges are to hear and determine all cases arising in or related to a case under Title 11, with their orders and judgments subject to review under 28 U.S.C. § 158. E.D. Mich. LR 83.50(a)(2). The Local Rules specify, "[b]ankruptcy judges will hear all the non-core proceedings related to a case under Title 11." E.D. Mich. LR 83.50(a)(3). If the parties consent, the "bankruptcy judges may conduct hearings and enter appropriate orders or judgments in the proceeding, subject only to review under 28 U.S.C. § 158." E.D. Mich. LR 83.50(a)(3)(A). Where the parties do not consent, "bankruptcy judges will conduct hearings and file proposed findings of fact and conclusions of law and a proposed order or judgment with the bankruptcy clerk" on these non-core proceedings. E.D. Mich. LR 83.50(a)(3)(B). Thus, this District has authorized bankruptcy courts to hear non-core proceedings up until the point of trial.

**B. Most Efficient Use of Judicial and Parties' Resources**

As Appellants themselves admit, "[t]his case is at its inception, and the facts are not yet developed." Dkt. No. 1, p. 23 (Pg. ID 23). The Court agrees that this matter is in the early stages of litigation, and the certainty and timing of trial are far

from clear. Were the Court to withdraw the reference and oversee pretrial litigation on the Adversary Proceeding, it would set up two distinct, but concurrent, discovery paths—one in this Court and one in the bankruptcy court, where related discovery is continuing outside of the Adversary Proceeding. This could potentially result in needlessly expensive and duplicative efforts by the two courts, as well as run the risk of inconsistent rulings with regard to discovery and obligations thereunder. Such dual efforts could cause confusion and delay, which may ultimately hinder the resolution of both the Adversary Proceeding and the underlying Bankruptcy Case.

Appellants assert, "[u]nlike the Bankruptcy Court, this Court can expeditiously schedule and preside over a jury trial on the matters at issue." Dkt. No. 1, p. 22 (Pg. ID 22). This idealistic statement does not accurately reflect the current state of the Court's caseload. Appellants then assert that judicial economy favors withdrawal because they will likely appeal any decision rendered by the bankruptcy court. *Id*. The Court does not find that a party's threat to appeal adverse decisions made by the bankruptcy court constitutes cause to withdraw, or that such a threat demonstrates judicial resources are best conserved by withdrawal.

This Court frequently benefits from the thorough review and recommendations made by Magistrate Judges; a recommendation from the Bankruptcy Court, subject to review and ruling by this Court, could provide just as

much of a benefit. Therefore, the Court concludes that judicial economy and conservation of party resources will be best served by permitting the bankruptcy judge to continue to oversee the pretrial litigation matters for both the Adversary Proceeding and Bankruptcy Case.

**C. Promotion of Uniformity in Bankruptcy Administration**

Based on the claims and facts alleged, it does not appear that discretionary withdrawal of the reference would impact uniform interpretation of bankruptcy law.

**D. Prevention of Forum Shopping**

Based on the facts presented to the Court, it does not appear that discretionary withdrawal of the reference would implicate concerns over forum shopping.

**E. Other Related Factors**

Appellants assert that their main reason for seeking withdrawal of reference is that they have a right to a jury trial, but refuse to consent to a jury trial in the bankruptcy court. Dkt. No. 1, p. 13 (Pg. ID 13). At least one case in this District has found that being entitled to a jury trial constitutes cause for withdrawing a reference. *See In re Skyline Concrete Floor Corp.*, 410 B.R. 564, 567 (E.D. Mich. 2008). However, multiple more recent cases in this District have found that a demand for a jury trial is an insufficient cause for discretionary withdrawal if the

motion is made at an early stage of the proceedings and dispositive motions—pending before the bankruptcy court—may resolve the matter prior to a trial. *See, e.g.*, *In re Cmty. Mem'l Hosp.*, 532 B.R. 898, 905–06 (E.D. Mich. 2015); *In re Energy Conversion Devices, Inc.*, No. 12-12653, 2012 WL 5383165, at *2 (E.D. Mich. Oct. 26, 2012) ("noting "the standard practice of this Court, and of others in this District, is to 'permit[ ] the Bankruptcy Judge to manage the pre-trial phase of the litigation, with this Court revisiting the matter of withdrawal if and when the case is ready for trial.' "); *Official Comm. of Unsecured ex rel. Estate of Greektown Holdings, LLC v. Papas*, Nos. 10–cv–12628, 10–cv–12742, 10–cv–12774, 2010 WL 4807067, at *2 (E.D. Mich. Nov. 18, 2010) ("Generally, the Courts of this District have denied withdrawing the reference until the case is ready for trial.") (collecting cases).

Appellants also argue that the Bankruptcy Court has prejudged the matter because the Court acknowledged the possibility that the Trustee could succeed on some claims in the Adversary Proceeding during a hearing. *See* Dkt. No. 1, pp. 24–26 (Pg. ID 24–26). However, Appellants never supplied the Court with a transcript of the hearing were the allegedly biased comments were made. The Court does not find that these bare allegations of bias and prejudgment constitute proof that the Bankruptcy Court has already determined that Appellants are liable. This argument does constitute cause for withdrawal, and it does not merit further analysis.

The Court concludes that withdrawal of reference is not ripe for consideration based on the early stage of these proceedings and Appellee's pending motion for summary judgment before the bankruptcy court. *See* Dkt. No. 3-1, pp. 6–7 (Pg. ID 91–92) ("Plaintiff Trustee has filed a motion for summary disposition . . . that, if granted, would dispose of the vast majority of the claim").

## IV. CONCLUSION

Accordingly, Court **DENIES** Appellants' Motion to Withdraw the Reference [1] without prejudice. Should the matter proceed toward trial, the Court will entertain a renewed motion to withdraw at that juncture.

IT IS SO ORDERED.

Dated: March 27, 2017

/s/Gershwin A Drain
HON. GERSHWIN A. DRAIN
United States District Court Judge